Vincent **SUBIRATS**, Plaintiff,

v.

**Eleanora D'ANGELO, individually and as a housing inspector of the Town of Huntington, New York and the Town of Huntington, New York, Defendants.**

No. CV 94–2748 (ADS).

United States District Court, E.D. New York.

Sept. 3, 1996.

Arthur V. Graseck, Jr., Port Washington, New York, for Plaintiff.

Lawrence W. Cregan, Town Attorney, Town of Huntington, New York by John M.

Duffy, Deputy Town Attorney, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

The plaintiff, Vincent Subirats (the "plaintiff" or "Subirats") commenced this lawsuit against the defendants Eleanora D'Angelo, in her individual and official capacities as a housing inspector for the Town of Huntington ("D'Angelo"), and the Town of Huntington (the "Town"), pursuant to 42 U.S.C. §§ 1983 and 1988 alleging violation of his constitutional due process and equal protection rights. The gravamen of the complaint is that the plaintiff was the victim of a malicious prosecution when the defendants issued two summonses for violation of the Town Code which were later dismissed on Subirats' motion.

Presently before the Court is the defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) or in the alternative for summary judgment in their favor pursuant to Fed.R.Civ.P. 56. The plaintiff opposes the motion arguing that he has sufficiently established his claim and that there are issues of fact as to the merits of this case.

I. *Background*

The following facts are taken from the affidavits submitted by the defendants and are uncontroverted. The plaintiff is the owner of two buildings located on a single parcel of land with the addresses 199 Mill Dam Road ("199") and 34 Crossman Drive ("34") in Centerport, New York. In November 1987, the Town of Huntington Building, Engineering and Housing Department received two anonymous complaints regarding 199 and 34.[1] The basis for each complaint was the existence of an illegal apartment at these locations. The complaints were referred to Inspector D'Angelo for investigation.

On December 2, 1987 D'Angelo went to 199 where she identified "a cottage with a garage at street level and apparent living space above it." Because no one was home,

D'Angelo left her business card and proceeded to 34. However, she was "unable to locate . . . 34 . . . because no such number was posted or in view and because the house numbers on Crossman Dr[ive] were randomly situated." A subsequent search at the Town Assessor's Office revealed that the owners of the parcel were "Vimon Rich, Inc." and "Vincent and Monica Subirats." On January 25, 1988 D'Angelo sent Vimon Rich, Inc. by mail a Notice of Violation based on the original complaints. This Notice was returned unclaimed.

The next day, on January 26, 1988, D'Angelo received another anonymous call explaining for the first time that 199 and 34 were situated on the same lot. The caller explained that 34 was adjacent to his mother's home located at 20 Ridgefield Road in Centerport. On January 28, 1988, D'Angelo sent another Notice of Violation to Vimon Rich, Inc. citing a violation of Town Code section 87–25(A) for having no Certificate of Occupancy and section 198–10G for maintaining two dwellings on a single parcel. The Town again received no response to this Notice.

On February 8, 1988 D'Angelo went to 20 Ridgefield Road where she met with a "Mrs. Anglisano," who advised her that building extensions had been added to the structure at 34, without a permit, and confirmed that 199 and 34 sat on the same parcel of land. Further, Mrs. Anglisano confirmed that the plaintiff, Subirats, was the owner of the property.

After a continued search D'Angelo discovered that building permits had been issued to one "Johanna Rocca, c/o Monica Subirats," the plaintiff's wife, on March 20, 1974 and on April 4, 1978 for additions to the "dwelling at the S/E corner of Mill Dam Rd. and Crossman Dr.," which was previously identified by the plaintiff's neighbor as the "main house." She also discovered a Certificate of Occupancy, dated April 20, 1978 (the "Certificate"), issued for extensions to the structure at the same location, and a Letter in Lieu of a

---

1. The dates in the complaints are November 30, 1987 and November 31, 1987. However, because there are only thirty days in November, the Court assumes that this mistake was the result of clerical error.

Certificate of Occupancy dated May 11, 1978 (the "Letter") referring to a structure located at "199 Mill Dam Road" as having been built prior to establishment of the Town Building Code. As a pre-existing non-conforming use, the structure would not be subject to the Town Code's enforcement provisions. The application for the Letter was signed by Monica Subirats, the plaintiff's wife, "covering 199 Mill Dam Road on March 2, 1978."

However, based on a visual observation of the premises, which established that the building modifications were made on 34 and not 199, and her reading of the foregoing permits, certificate and letter, as well as the building plans for the modifications, D'Angelo determined that the aforementioned documents were issued with respect to 34 rather than 199 as the Letter in Lieu indicates.

As a result of her determinations, D'Angelo issued to the plaintiff two summonses dated February 16, 1988 charging violations of (1) Town Code section 198–120(A) for failure to obtain a certificate of occupancy pertaining to the garage with the alleged dwelling at 199; and (2) Town Code section 198–10(G) for maintaining two dwellings on one lot. On March 30, 1988 the Code Enforcement Division of the Town Building Department issued Prosecutorial Informations against the plaintiff.

A trial was held in November 1990 in the Suffolk County District Court (Trotto, J.), only with respect to the alleged section 198–120(A) violation for lack of a Certificate of Occupancy for the garage with an apparent dwelling. At the trial, the charge was dismissed on Subirats' motion based on the Town's failure to establish a prima facie case that a Certificate of Occupancy for 199 was necessary under the circumstances.

The plaintiff does not dispute any of the facts stated above. The Complaint, which is virtually devoid of any factual allegations, invokes the "Fifth and Fourteenth Amendment rights to substantive due process ... and equal protection," alleging merely that the plaintiff's prosecution pursuant to the Huntington Town Code was "maliciously" commenced "without probable cause" by D'Angelo "for some purpose personal to her,

including the purpose of benefitting politically well-connected neighbors of [the] plaintiff at his expense." This "abuse ... was consistent with an institutionalized practice of the Town" which took no "action to prevent ... D'Angelo from continuing to engage in such misconduct."

In his opposing papers, Subirats submitted evidence for the first time by way of affidavits, alleging that issuance of the two summonses and the related trial described above are part of an overall scheme undertaken by the Town to deprive him of his due process rights.

In support of his position he contends that in 1976 he was denied a permit to subdivide his property based on an unidentified related State Court proceeding in New York Supreme Court, Suffolk County. According to Subirats, in the state court proceedings, the Anglisano family made material misrepresentations regarding a "paper street" between the plaintiff's property and their own. Specifically, the plaintiff claims that the Anglisanos advised the court that there were no other abutting property owners to the paper street. As a result of this information, the paper street was deemed abandoned and the plaintiff's application to subdivide his property was denied. Subirats contends however, that contrary to the information provided by the Anglisanos, the Town knew that his property abutted the paper street based on his subdivision application.

According to the plaintiff, the finding of an abandonment was in violation of state law providing that an abandonment can be lawfully accomplished only when approved in writing by the Town Superintendent of Highways and the Town Board, and then properly recorded, which was not done here. Based on these events, Subirats commenced a second action in New York Supreme Court, Suffolk County against the Angilsanos and the Town of Huntington, *Subirats v. Anglisano*, No. 90–17913 (N.Y.Sup.Ct. Suffolk Cty). The resolution of this lawsuit is unclear.

Given this history, Subirats contends that:

[The] Town was well aware of the nature, character, and uses of [his] property and had been so aware for well over ten years

prior to [his] receiving the notice of violation.... Oddly enough, the complaints which led to the later prosecution of [the plaintiff] for the same alleged violations came from the Anglisanos who were named defendants (together with the Defendant Town) in [the] State Supreme Court action.

According to the plaintiff, as a result of the prior lawsuit the Town had notice that 199 contained "no extensions or other improvements" which would have altered its status as a pre-existing non-conforming use. As a result, claims the plaintiff, D'Angelo "cannot be relieved of the obligation to act reasonably and prudently and to conduct proper investigations prior to taking official action on behalf of the Town. The fact that she ignored this obligation should not be the excuse that relieves her from liability."

In addition to the incidents relating to the subdivision application set forth for the first time in the plaintiff's opposing affidavits, the plaintiff's wife submitted an affidavit stating that during the State Court trial underlying this action, D'Angelo "shoved" her while in the restroom, and that while the "paper street" discussed above was "being filled in," a Town employee stated to her that "[w]e're [presumably the Town] going to make sure you never use this road again."

## II. *Discussion*

### A. *The standard*

The defendants move to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative for summary judgment pursuant to Fed.R.Civ.P. 56. However, because the parties have submitted documentary evidence with their briefs the Court will treat this motion as one for summary judgment.

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Terminate Control Corporation v. Horowitz,* 28 F.3d 1335, 1352 (2d Cir.1994) (quoting *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990)), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91

L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Institute for Shipboard Education v. Cigna Worldwide Insurance Co.,* 22 F.3d 414, 418 (2d Cir.1994); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir.1990). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Lane v. New York State Electric & Gas Corp.,* 18 F.3d 172, 176 (2d Cir.1994); *Rattner v. Netburn,* 930 F.2d 204 (2d Cir.1991).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Western World,* 922 F.2d at 121. Although the non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Fed.R.Civ.P. 56(c) and 56(e) provide that the non-moving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *United States v. Rem,* 38 F.3d 634 (2d Cir.1994).

Finally, when determining a motion for summary judgment, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994); *Eye Assocs., P.C. v.*

*IncomRx Sys. Ltd. Partnership,* 912 F.2d 23, 27 (2d Cir.1990).

### B. *The defendants' motion*

In order to state a claim for malicious prosecution under New York State law, the plaintiff must demonstrate: (1) the initiation and continuation of criminal process against the plaintiff; (2) the lack of probable cause for commencing the proceeding, and; (3) actual malice as the motivation for the defendant's actions; (4) termination of the proceeding in the plaintiff's favor. *Rounseville v. Zahl,* 13 F.3d 625, 628 (2d Cir.1994); *see also Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248, 1249–50 (1983); *Martin v. City of Albany,* 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614, 364 N.E.2d 1304, 1306–07 (1977).

However, Section 1983 claims based on malicious prosecution are subject to a much more rigorous analysis as the result of the Supreme Court's decision in *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). In *Albright,* Illinois authorities issued an arrest warrant for the plaintiff, Kevin Albright, charging him with the sale of a something which looked like a controlled substance. Upon learning of the warrant he surrendered to the defendant, Detective Roger Oliver, but denied his guilt. He was released after posting bond upon, among other conditions, that he not leave the state without court permission. At a preliminary hearing the court found probable cause to hold Albright for trial. At a subsequent pretrial hearing the charges were dismissed on the ground that they failed to state an offense under Illinois law.

Albright then filed a Section 1983 lawsuit against Oliver alleging that his substantive due process rights to be free from criminal prosecution, a "liberty interest," were violated under the Fourteenth Amendment. The case was appealed to the Supreme Court on the issue of whether such a constitutional rights exists.

With seven justices answering this question in the negative and six opinions, Chief Justice Rehnquist, joined by Justices Scalia, Ginsburg and O'Connor, recognized that Section 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method of vindicating federal rights elsewhere conferred.' " *Id.* at 271, 114 S.Ct. at 811 (plurality Rehnquist, CJ.), quoting, *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979). The first step of the inquiry is to identify the constitutional right infringed. *Id.*

In conducting the analysis, the plurality recognized that where "a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.' " *Id.* at 273, 114 S.Ct. at 813, quoting, *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Applying this standard, Chief Justice Rehnquist found that the pretrial deprivations of liberty are addressed in the Fourth Amendment which protects against "unreasonable searches and seizures" and the issuance of warrants without probable cause. *Id.* Accordingly, the plaintiff's claim for malicious prosecution was held to be untenable under the rubric of substantive due process. *Id.* at 273–76, 114 S.Ct. at 813–14.

Chief Justice Rehnquist's determination that a section 1983 malicious prosecution claim cannot be maintained as a violation of substantive process due process does not conclude the analysis. In his concurring opinion, which was joined by Justice Thomas, Justice Kennedy reasoned that although the Due Process Clause protects interests other than the freedom from personal restraint, and that some of those interests overlap with the common law of torts, "a state actor's random and unauthorized deprivation of [a due process] interest cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate post-deprivation remedy." *Id.* at 284, 114 S.Ct. at 818 (Kennedy, J., concurring), citing, *Parratt v. Taylor,* 451 U.S. 527, 535–44, 101 S.Ct. 1908, 1912–17, 68 L.Ed.2d 420 (1981). He found that a contrary approach would convert any tort committed by a state official into a Section 1983 claim. *Id.* Accordingly, because Illinois provides a remedy for malicious prosecution, the plaintiff should be unable to invoke a Section

1983 cause of action. *Id.* at 284–85, 114 S.Ct. at 819.

The Second Circuit further developed the principles set forth in *Albright* in *Singer v. Fulton County Sheriff,* 63 F.3d 110 (2d Cir. 1995). In *Singer,* the plaintiff Daniel Singer, "a maverick in local politics" with an "ability to influence public opinion" was employed as a ranger by the New York State Department of Environmental Conservation. *Id.* at 112–13. On October 21, 1991 Singer received an emergency call that he join a search party forming to look for a missing hunter. On the way, he stopped at a local convenience store to pick up food supplies. According to the store clerk, Singer took the provisions, stated his circumstances, and advised the clerk that he would return later to pay for them. Singer claims the clerk consented the arrangement. The clerk disagreed.

Some time later Singer was arrested and charged with petty larceny. The charges were later dismissed in the "interests of justice" as "the prosecution was unable to locate its primary witness," the store clerk. *Id.* at 113. Singer then filed a complaint in federal district court alleging, among other things, two claims for malicious prosecution, one pursuant to Section 1983 and one under state common law. Granting summary judgment, the District Court dismissed both claims.

In affirming the decision of the District Court, the Second Circuit, interpreting *Albright,* recognized that "the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution; however, *Albright,* does not bar [plaintiffs] from asserting a federal claim for malicious prosecution under the Fourth Amendment." *Id.* at 114. "Once a plaintiff presents a claim for malicious prosecution under § 1983, the court must engage in two inquiries: whether the plaintiff's conduct was tortious; and whether the plaintiff's injuries were caused by the deprivation of liberty guaranteed by the Fourth Amendment." *Id.* at 116.

Addressing the second issue first, namely the constitutional injury, the court recognized that the inquiry begins with the common law of torts because " 'in some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right.' " *Id.,* quoting, *Carey v. Piphus,* 435 U.S. 247, 258, 98 S.Ct. 1042, 1049, 55 L.Ed.2d 252 (1978). The validity of the claim however, must be judged against a specific constitutional standard; in the case of a malicious prosecution claim, the Fourth Amendment. *Singer,* 63 F.3d at 116.

■ "The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty." *Id.* Accordingly, the plaintiff asserting a Section 1983 malicious prosecution claim must demonstrate a deprivation of liberty "consistent with the concept of 'seizure.' " *Id.* This added requirement is to ensure that any damages awarded for such a claim compensates for a *constitutional* deprivation. As a result, not all official conduct which might give rise to a malicious prosecution claim under state law would suffice to establish a similar claim under Section 1983.

Neither the Supreme Court in *Albright,* nor the Second Circuit in *Singer,* enunciated what type of deprivation of liberty would satisfy the requirement of a constitutional injury for the purpose of establishing a malicious prosecution claim. *Niemann v. Whalen,* 911 F.Supp. 656, 669–70 (S.D.N.Y.1996). In *Niemann,* the District Court recognized that *Singer* was concerned with an alleged constitutional violation where the plaintiff was arraigned and then immediately released. *Id.* at 670; *see also Murphy,* 903 F.Supp. at 631 (to state a Section 1983 malicious prosecution claim the plaintiff must show some post-arraignment deprivation of liberty rising to the level of a constitutional violation). This concern is especially significant because the Supreme Court has already held that a pre-trial determination of probable cause is not a prerequisite to the institution of criminal charges unless the defendant suffers restraints on liberty other than the necessity of appearing for trial. *Id.,* citing, *Gerstein v. Pugh,* 420 U.S. 103, 125 n. 26, 95 S.Ct. 854, 869 n. 26, 43 L.Ed.2d 54 (1975). Accordingly the requirement of a court appearance in and of itself would not rise to the

**149**

level of a constitutional injury, nor would the attendant legal fees or injury to reputation. *Id.,* citing, *Williams v. Weber,* 905 F.Supp. 1502, 1511–12 (D.Kan.1995).

 Applying these standards, the Court concludes that the plaintiff has failed to establish a Section 1983 claim for malicious prosecution. At the outset, the Court recognizes that Subirats tried to invoke the doctrine of substantive due process in order to maintain his claim. However, as discussed above, the Supreme Court has rejected such a theory of liability in *Albright.* Moreover, even if the Court were to recast the plaintiff's cause of action under the Fourth Amendment, his claim would still fail. While, as the *Niemann* court noted, there has been little guidance as to what would constitute a deprivation of liberty sufficient to support a claim for malicious prosecution, it is clear that Subirats' claim does not meet this threshold. The only evidence presented demonstrates that the plaintiff was issued two summonses to appear in a state court as a result of his alleged violation of the Huntington Town Code. There is no proof that his liberty was restricted in any meaningful way. For example, there is no evidence that he was required to post bail, or that his ability to travel was limited. His only constraint was that he had to appear in court at a specified time and incur related legal expense. Consistent with the district court's decision in *Niemann,* this Court now concludes that such allegations are insufficient to establish a Section 1983 claim for malicious prosecution. Further, there is simply no evidence that similarly situated people were treated differently sufficient to translate the plaintiff's allegations into a cause of action under the equal protection clause. Accordingly, the defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56, dismissing the Complaint, is granted.

Having granted the defendants' motion based on the plaintiff's failure to establish a cause of action, the Court need not consider the other arguments raised by the defendants in the motion papers such as qualified immunity and *Monell* liability.

III. *Conclusion*

Having reviewed the parties' submissions, as well as the Court file, and for the reasons set forth above, it is hereby

ORDERED, that the defendants' motion for summary judgment pursuant to Fed. R.Civ.P. 56 dismissing the Complaint is granted, and it is further

ORDERED, that the Clerk of the Court is directed to close this case.

SO ORDERED.