Steven M. JOHNSON and Rebecca Guzman Johnson, Plaintiffs,

v.

The CITY OF NEW YORK, Raymond W. Kelly, Individually and as Police Commissioner, City of New York, Police Officer Workmeizter, Individually and as a Police Officer 109th Precinct; Police Officer Polis, Individually and as a Police Officer 109th Precinct, Queens, New York; and Sergeant Ordonez, Shield No. 3307, Individually and as a Police Officer, 109th Precinct, Defendants.

No. 93 Civ. 7263 (RWS).

United States District Court, S.D. New York.

Sept. 24, 1996.

Mitchell, Incantalupo & Vafides, Forest Hills, NY (Thomas v. Incantalupo, of counsel), for plaintiffs.

Paul A. Crotty Corporation Counsel of the City of New York, New York City (Patricia LeGoff, Assistant Corporation Counsel of counsel), for defendants.

## OPINION

SWEET, District Judge.

In this action brought pursuant to 42 U.S.C. § 1983 ("Section 1983") and New York State law, Defendants moved for summary judgment pursuant to Rule 56, Fed. R.Civ.P. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

### *Parties*

Plaintiff Steven M. Johnson ("Johnson") is a United States citizen residing in North Kansas City, Missouri. Plaintiff Rebecca Guzman Johnson is Johnson's wife; she is also a United States citizen residing in North Kansas City, Missouri.

Defendant City of New York (the "City") is a municipal corporation that operates the New York City Police Department. Defendant former Police Commissioner Raymond W. Kelly ("Kelly"), was at all relevant times acting Police Commissioner of the City of New York.

Defendants Dorothy Werkmeister ("Werkmeister") and John Polis ("Polis") (collectively, the "Officers") are New York City Police Officers. Defendant Sergeant Julio Ordonez ("Ordonez") is a sergeant in the New York City Police Department, and was acting Sergeant of the 109th Precinct, Flushing, New York, at all relevant times.

*Prior Proceedings*

Johnson filed the Complaint in this action on October 21, 1993. The Complaint alleges that, in violation of Section 1983 and New York State tort law, Polis and Werkmeister arrested and detained Johnson without probable cause, Polis used excessive force against Johnson while he was in custody, and Ordonez improperly allowed Johnson to be detained after he was brought to the 109th Precinct. The Complaint includes a Section 1983 claim against the City and Kelly, alleging that a municipal policy caused the deprivation of Johnson's constitutional rights. Finally, the Complaint includes a Section 1983 claim by Rebecca Guzman Johnson for deprivation of her constitutional rights.

On May 21, 1996, Defendants moved for summary judgment, arguing that: (1) Johnson's false arrest and malicious prosecution claims, brought pursuant to Section 1983 and state tort law, should be dismissed because there was probable cause to arrest him, and there was no post-arraignment deprivation of liberty; (2) Johnson's excessive force claim, also brought pursuant to Section 1983 and state tort law, should be dismissed because the minimal force used against plaintiff in handcuffing him was reasonable; (3) the Officers are entitled to qualified immunity because it was objectively reasonable for Werkmeister, Polis and Ordonez to believe that there was probable cause for the arrest of the Plaintiff, and it was objectively reasonable for Polis to believe that the force used in handcuffing Plaintiff was reasonable and did not violate Plaintiff's Fourth Amendment rights; (4) Rebecca Guzman Johnson's claims should be dismissed because she had no involvement in the incident; and (5) the claims against the City and Kelly should be dismissed because there is no evidence that a municipal policy caused the alleged constitutional deprivation of Johnson's rights.

Plaintiffs have since conceded that there is no evidence that a municipal policy caused the alleged constitutional deprivation of Johnson's rights, and that the claims against the City and the Police Commissioner should therefore be dismissed. Oral argument on Defendants' motion was heard on June 5, 1996, at which time the motion was considered fully submitted.

*Facts*

On July 24, 1992, Johnson was driving alone northbound along 123rd Street in Queens, New York. At approximately 7:30 p.m., he was stopped by Officers Polis and Werkmeister for blaring his horn at the Officers. He was issued a summons for horn use other than danger.[1]

After stopping Johnson, Werkmeister asked him for his license, registration and insurance cards. Werkmeister radioed the dispatcher and provided the dispatcher with Plaintiff's name, race and date of birth as listed on his license and other documents. The dispatcher informed Werkmeister that there was an outstanding bench warrant for a Steven Johnson, and told Werkmeister the height and weight of the subject of the warrant—5 feet, 10 inches tall, 170 pounds. The Plaintiff Johnson is a light-skinned black male who stands 5 feet, 6 inches tall and weighs 145–150 pounds.

The Officers determined that Johnson roughly fit the description of the suspect identified in the warrant, and radioed for a back-up unit. Werkmeister advised Johnson that he was under arrest. Officer Polis handcuffed Johnson with his hands behind his back. Johnson was then driven to the 109th Precinct by Werkmeister and Polis.

The warrant pursuant to which Plaintiff was arrested identified "Steven Johnson," with no middle initial, a black male, 5 feet, 10 inches tall, 170 pounds, with dark eyes and dark hair, who resides at 1035 Clarkson Avenue, Brooklyn, New York. The Plaintiff Johnson is a light-skinned black male with light brown hair and hazel eyes, 5 feet, 6 inches tall, 145–150 pounds who resides at 1451 NE Wooded Path, Apt. 101, N. Kansas City, Missouri.

Upon arriving at the Precinct, Johnson was taken before the desk officer, Sergeant Ordonez. Werkmeister and Polis told Ordonez that Johnson was arrested pursuant to an outstanding warrant. Johnson protested to Ordonez that he was not the person identified in the warrant, but Ordonez was not

---

1. Plaintiff was subsequently found guilty of the traffic violation and paid a fine.

provided with Johnson's license, registration and insurance card.

Johnson was placed in a cell at the precinct and remained handcuffed while he was in the cell. Although Johnson informed Polis that the handcuffs were too tight and were causing him injury, the handcuffs were not removed or loosened. At some point, Johnson was front-cuffed.

At approximately 10:10 p.m., Johnson was transported from 109th Precinct to Brooklyn Central Booking. Johnson remained front-cuffed after he was removed from the cell and transported to Brooklyn Central Booking. Johnson remained in a cell at Brooklyn Central Booking for about one hour. .

Johnson then appeared before Honorable Joel Goldberg, Criminal Court Judge of the City of New York, who asked him his name, social security number, height, weight and age. Judge Goldberg noted that Johnson was not 5 foot 10 inches tall, and ascertained that Johnson was not the individual identified in the warrant pursuant to which he had been arrested. Judge Goldberg immediately released Johnson at approximately midnight on July 24, 1992.

Upon his release, Johnson went to Booth Memorial Hospital in Flushing, New York, where he received medical treatment for pain and numbness in his wrists and hands. Michael J. Katz, M.D. saw Johnson and referred him to a physical therapist for treatment. Johnson was also evaluated by a psychologist for the exacerbation, as a result of his incarceration on July 24, of his prior condition of Post–Traumatic Stress Syndrome.

### Discussion

### I. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991).

"The party seeking summary judgment bears the burden of establishing that no gen-uine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### II. *Johnson's Section 1983 Claims For False Arrest and Malicious Prosecution*

With respect to Johnson's Section 1983 claims for false arrest and malicious prosecution, Defendants argue that (1) probable cause existed to arrest Johnson, and (2) they are entitled to qualified immunity with respect to these claims.

### A. *Plaintiff Fails to State a 1983 Claim for Malicious Prosecution*

■ The Second Circuit has held that "a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest, ... while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 117 (2d Cir.1995); *Gonzalez v. City of New York, et al.*, 1996 WL 227824 (S.D.N.Y.1996) (citations omitted); *Murphy v. Lynn*, 903 F.Supp. 629, 632 (S.D.N.Y.1995) (malicious prosecution claim dismissed because "plaintiff does not allege any post-arraignment deprivation of liberty"). Johnson alleges that he was released immediately following his appearance before Judge Goldberg. Because Johnson fails to allege that he suffered a post-arraignment deprivation of liberty, his malicious prosecution claim will be dismissed.

### B. *An Issue of Fact Remains Regarding Whether The Officers are Entitled to Qualified Immunity Regarding Plaintiff's Section 1983 False Arrest Claims*

■ Qualified immunity shields police officers from civil liability where the perfor-

mance of their discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Mitchell v. Forsyth,* 472 U.S. 511, 517, 105 S.Ct. 2806, 2810–11, 86 L.Ed.2d 411 (1985). Here, the right at issue—to be free from arrest absent probable cause—is a clearly established constitutional right.

 An officer may also establish qualified immunity by showing that, notwithstanding a violation of a clearly established constitutional or statutory right, it was objectively reasonable for him to believe his actions did not violate this right. *Robison v. Via,* 821 F.2d 913 (2d Cir.1987). Qualified immunity exists if the undisputed facts and all permissible inferences favorable to the plaintiff show either (a) that it was objectively reasonable for the officer to believe probable cause existed, or (b) that officers of reasonable competence could disagree on whether there was probable cause. *Id.* at 921; *see also Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992).

 In this action, it cannot be said as a matter of law that officers of reasonable competence could disagree on whether there was probable cause to arrest Johnson. Probable cause to arrest exists when officers have knowledge of, or reasonably trustworthy information about, facts and circumstances sufficient to warrant a person of reasonable caution to believe that an offense has been committed or is being committed by the person to be arrested. *Golino,* 950 F.2d at 870 (citing *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). "Officers have probable cause to arrest if they receive 'information from some person ... who it seems reasonable to believe is telling the truth.'" *Thomas v. Culberg,* 741 F.Supp. 77 (S.D.N.Y.1990) (quoting *Daniels v. United States,* 393 F.2d 359, 361 (D.C.Cir.1968)).

Werkmeister and Polis were informed by a police dispatcher that there was a warrant out for the arrest of a "Steven Johnson" of the same race as Johnson. The subject was described by the dispatcher as 5 feet, ten inches tall, 170 pounds. The Plaintiff Johnson stands 5 feet, 6 inches tall, and weighs 145–150 pounds. A question of fact remains for the jury regarding whether reasonable officers could disagree over whether probable cause existed to arrest the Plaintiff, given the significant disparity between the height and weight of the subject of the warrant, and the height and weight of the Plaintiff. *See Moore v. Comesanas,* 32 F.3d 670, 673 (2d Cir.1994) ("issue of probable cause was ... predominantly factual in nature [and was] properly presented to the jury"). A further issue of fact remains as to whether the Officers' failure to seek a fuller description of the subject of the warrant, such as address, eye color or skin tone, was reasonable in light of the circumstances of Johnson's arrest.

Accordingly, summary judgment for Werkmeister and Polis on Johnson's Section 1983 claim for false arrest is inappropriate.

### III. *Plaintiff's Section 1983 Excessive Force Claim*

 Claims of excessive force arising out of an arrest are analyzed under the Fourth Amendment; thus, an objective reasonableness standard applies. *See Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Fourth Amendment's objective reasonableness standard must be evaluated in light of the particular circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. at 1872. "'Not every push and shove, even if it may later seem unnecessary in the peace of a judge's chambers,'" violates the Fourth Amendment. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

### A. *Plaintiff's Section 1983 Claim for Excessive Force Against Werkmeister and Ordonez Will Be Dismissed*

The only Defendant who Plaintiff claims used force against him is Officer Polis. According to the Complaint, Polis' handcuffing of Johnson constituted excessive force.

Plaintiff alleges that Polis handcuffed him, that he was left handcuffed for approximately 4 to 5 hours, that his handcuffs were too tight, that he complained to Officer Polis about the tightness of his handcuffs, and that he sought and received medical treatment for injury to his hands following his release.

At his deposition, Johnson testified that while he was at the 109th Precinct, he was placed in the holding pen and at some point was front handcuffed. He remained front handcuffed from the point he was at the 109th Precinct until he arrived at Brooklyn Central Booking, which Johnson alleges was an unreasonable amount of time to be left handcuffed. Defendants contend that Polis' handcuffing of Johnson could not have constituted unreasonable force, since Johnson had freedom of movement while in the pen, and his hands were cuffed in the front, which is considerably more comfortable than being rear-cuffed. Defendants further argue that because Johnson does not allege that he was struck or mistreated in any way, this act of restraint does not rise to the level of a constitutional violation.

Because Johnson does not allege that Officer Werkmeister or Sergeant Ordonez used force against him, any claim for excessive force against these Defendants will be dismissed.

### B. Polis is Entitled to Qualified Immunity on the Excessive Force Claim

Polis is entitled to qualified immunity on Johnson's excessive force claim. The Second Circuit has held that qualified immunity is available to individual defendants in cases alleging excessive force in violation of the Fourth Amendment. *See Lennon v. Miller,* 66 F.3d 416, 425–26 (2d Cir.1995). In *Lennon,* the Second Circuit sanctioned a considerable amount of force by defendants. In that case, the police officers asked plaintiff to get out of a car in which she was sitting. Plaintiff refused, and in order to place her under arrest, the defendant officer forcibly removed her from the vehicle. In removing the plaintiff, the officer "pulled her hand off the ignition, placed his arm around her neck, shoulder, right arm, and right hand, and forcibly removed her from the car." *Lennon,* 66 F.3d at 419.

In reversing the District Court and finding that the defendant officer was entitled to qualified immunity on the excessive force claim, the Court held:

The intrusion on [plaintiff]'s Fourth Amendment rights, if any, was extremely limited. It was objectively reasonable for [defendant] to believe that in pulling the plaintiff from the car to effect her arrest, he was not infringing on her Fourth Amendment rights. Under the circumstances described above, no jury could find that it was objectively unreasonable for the officers to believe that the force used to remove [plaintiff] from the car was not excessive.

*Id.* at 426.

Under *Lennon,* Defendant Polis is entitled to qualified immunity. Johnson states that he was handcuffed in front, rather than in the rear, which is a far more comfortable position. Plaintiff admits that his movement was not restricted; he could shake the bars of his cell and move his hands. Any intrusion on Plaintiff's Fourth Amendment rights by the handcuffing was extremely limited, and did not approach the level of intrusion the Second Circuit allowed in *Lennon.* At a minimum, reasonably competent officers could disagree over whether placing Johnson in handcuffs throughout his detention violated his Fourth Amendment rights. *Robison,* 821 F.2d at 921. Accordingly, Polis is entitled to qualified immunity on the excessive force claim.

### IV. Plaintiff's Claim Against Sergeant Ordonez Will Be Dismissed

Even assuming the truth of Johnson's allegations, Johnson's constitutional claim against Ordonez will be dismissed. Ordonez was the 109th Precinct desk officer. When Officers Werkmeister and Polis appeared before Sergeant Ordonez with Johnson, Ordonez asked the Officers the basis for the arrest and they advised him that they had arrested Johnson based on a warrant. Johnson protested repeatedly to Ordonez that he had never been arrested before and that the Officers arrested the wrong person.

Ordonez, however, was under no obligation to conduct an investigation into Plaintiff's claim of innocence. *See Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (holding that the detention for three days of a person arrested pursuant to a valid warrant does not amount to a constitutional violation, even though defendants failed to compare plaintiff to an actual picture of the suspect). Accordingly, Ordonez is entitled to qualified immunity.

### V. *Plaintiffs' Claims Against the City and Kelly Will Be Dismissed*

■■■ A municipality may not be held liable under 42 U.S.C. § 1983 for actions of its employees based on the theory of *respondeat superior. Monell v. Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). In order to establish municipal liability for unconstitutional acts by municipal employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal policy, custom or practice. *Id.; Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 *reh'g denied,* 473 U.S. 925, 106 S.Ct. 16, 87 L.Ed.2d 695 (1985). Plaintiffs have not come forward with any evidence to support their allegations of municipal liability, and have conceded that their Section 1983 claims against the City of New York and former Commissioner Kelly must be dismissed. Accordingly, Plaintiffs' *Monell* claims will be dismissed.

### VI. *Rebecca Guzman Johnson's Claim under 42 U.S.C. 1983 Will Be Dismissed*

■■■ To state a claim under 42 U.S.C. § 1983, Plaintiff must allege facts showing that the conduct complained of was committed by a "person" acting under color of state law, and that the conduct deprived plaintiff of a right, privilege or immunity secured by the Constitution or the laws of the United States. *Oberlander v. Perales,* 740 F.2d 116, 119 (2d Cir.1984); *Laverpool v. New York City Transit Auth.,* 760 F.Supp. 1046, 1056 (E.D.N.Y. 1991); *Neustein v. Orbach,* 732 F.Supp. 333, 345 (E.D.N.Y.1990). Rebecca Guzman Johnson was not present when her husband was arrested on July 24, 1992, and she cannot establish that Defendants deprived her of her civil rights. Accordingly, her Section 1983 claim against Defendants will be dismissed.

To the extent Rebecca Guzman Johnson seeks to make a claim for loss of consortium under state law, she must amend the pleadings to include such a claim.

### VII. *Plaintiffs' State Claims Will Not Be Dismissed*

Although Johnson's state law claims for false arrest, malicious prosecution and assault and battery could be dismissed for lack of subject matter jurisdiction, *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), supplemental jurisdiction will be exercised in light of the substantial discovery already conducted in this action. *See Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994) ("late in the action, after there has been substantial expenditure in time, effort and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary.")

■■■ In light of the Court's determination that an issue of fact remains that precludes summary judgment on Johnson's section 1983 claim for false arrest, summary judgment will not be granted with respect to Johnson's state law claim for false arrest. With respect to Johnson's state law claim for malicious prosecution, it remains for Defendants to affirmatively demonstrate that summary judgment is warranted on that claim. The dismissal of Johnson's Section 1983 claim for malicious prosecution does not automatically necessitate dismissal of his state law claim for malicious prosecution. *See Subirats v. D'Angelo,* 938 F.Supp. 143, 147 (E.D.N.Y.1996) (section 1983 claims for malicious prosecution subject to more rigorous standard than state law claims for malicious prosecution). Accordingly, summary judgment will not be granted on Defendants' state claims for false arrest and malicious prosecution.

■■■ Similarly, summary judgment will not be granted with respect to Johnson's

state law claim for assault and battery. The Court's finding that Polis is entitled to qualified immunity with respect to Johnson's Section 1983 claim for excessive force did not include a finding that the force used was in fact reasonable. Therefore, it has not been established that a defense exists pursuant to New York State Penal Law § 35.30 to Johnson's assault and battery claims. Such a determination of reasonableness must be made by a jury. Accordingly, summary judgment will be denied with respect to Johnson's assault and battery claims.

### Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is hereby granted with respect to Plaintiff's section 1983 claims for malicious prosecution and excessive force; Plaintiff's section 1983 claims against the City and Kelly; and Rebecca Guzman's claims. Summary judgment is hereby denied with respect to Plaintiff's section 1983 claims for false arrest and his state law claims for false arrest, malicious prosecution and assault and battery.

It is so ordered.