Charles E. HINTON, Plaintiff,

v.

Paul MORITZ, Senior Parole Officer; Luminia Pamerleau, Parole Hearing Officer; Richard Mata, Parole Hearing Officer; Brion D. Travis, Chairman of N.Y.S. Parole; Frederick Netzel, Superintendent of E.C.C.F.; George Pataki, Governor of New York State; John Doe # 3, (Mr. Pruitt), Fugitive Officer N.Y.S. Parole; John Doe # 2, (Martinez), Fugitive Officer N.Y.S. Parole; John Doe # 1, (Mecklenburg County Detention Officer); Jim Pendergraph, Mecklenburg County Sheriff; Jim Hunt, Governor of North Carolina State; G.C. Kidd, Charlotte Meck Police Ofcr., Richard Low, Supervising Parole Ofcr., Judith Cummin, Admin. Law Judge; Kenneth Graber, Parole Bd. Commr.; Glenn S. Goord, Commr. of D.O.C.S.; Anthony J. Annucci, Deputy Commr.; Dale Lawrence, Alerts Bureau; Carol D. Swan, Extradition Specialist; Mr. Walter Root, Parole Officer; Marcia Phillips, Trans. Coord.; and Rick Knuth; Defendants.

No. 98–CV–0392E(Sc).

United States District Court,
W.D. New York.

July 31, 1998.

Charles E. Hinton, Alden, NY, pro se.

## DECISION AND ORDER

SIRAGUSA, District Judge.

### INTRODUCTION

Plaintiff Charles Hinton, an inmate of the Erie County Correctional Facility, has filed

this *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket # 1) and has both requested permission to proceed *in forma pauperis* and filed a signed Authorization (Docket # 2). Plaintiff has also filed an amendment to his complaint (Docket # 3). Plaintiff claims that the defendants violated his constitutional rights by the manner in which they arrested him for a parole violation, extradited him to New York State and conducted his parole revocation hearings. For the reasons discussed below, plaintiff's request to proceed as a poor person is granted, his complaint is deemed to consist of the original complaint and the amendment to the complaint, and the complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on March 24, 1998, he was unlawfully arrested in Mecklenburg County, North Carolina, after defendant Moritz faxed a copy of a fugitive warrant to defendant Police Officer Kidd. Plaintiff claims that Moritz failed to follow the proper procedures for arresting and extraditing a fugitive, thus violating both New York and North Carolina state law and violating plaintiff's federal due process rights. Plaintiff further alleges that defendant Sheriff Pendergraph allowed the unlawful extradition to proceed in retaliation for plaintiff's filing of a 42 U.S.C. § 1983 action during the approximately one-month period he was incarcerated in North Carolina. Plaintiff states that he has been denied due process during the subsequent preliminary and final parole revocation hearings. Plaintiff seeks $1,605,000 in damages or alternatively, release from incarceration, $25,000 in damages, $1,000 payable to this Court and a seven-page apology (of not less than 777 words each) from each of the defendants.

### DISCUSSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action. Therefore, plaintiff is granted permission to proceed *in forma pauperis*.

Section 1915 mandates that when the court grants *in forma pauperis* status, it also must

conduct an initial screening of the action to ensure that it goes forward only if it meets certain qualifications. A review of plaintiff's complaint demonstrates that plaintiff's claims are based on indisputably baseless legal theories. As a result, this action is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B). *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

■ Plaintiff brings this action pursuant to 42 U.S.C. § 1983. In order to state a claim under § 1983, a plaintiff must allege: (1) that the challenged conduct was attributable at least in part to a person acting under color of state law; and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993).

As an initial matter, the Court notes that plaintiff filed both a complaint (Docket # 1) and an amendment to his complaint (Docket # 3), in which he added ten additional defendants and brought new claims against some of the original defendants. Affording plaintiff's complaint the liberal reading due pleadings filed by *pro se* litigants, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court deems plaintiff's complaint to consist of his original complaint with its attached exhibits (Docket # 1) and the amendment to the complaint with its attached exhibits (Docket # 3).

■ Plaintiff alleges that the North Carolina police defendants falsely arrested and imprisoned him. A § 1983 claim for false arrest is substantially the same as a claim for false arrest under both New York and North Carolina law, and the "existence of probable cause gives an officer the privilege to arrest and 'is a complete defense to an action for false arrest.'" *Marshall v. Sullivan,* 105 F.3d 47, 50 (2d Cir.1996), *quoting Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994); *see also Torchinsky v. Siwinski,* 942 F.2d 257, 264 (4th Cir.1991) (plaintiff can only succeed in a false arrest action under § 1983 if the police officer lacked probable cause to arrest); *Street v. Surdyka,* 492 F.2d 368, 372–73 (4th Cir.1974) (there is a no cause action for false arrest if the police

officer had probable cause). "Probable cause to arrest exists when officers have knowledge of, or reasonably trustworthy information about, facts and circumstances sufficient to warrant a person of reasonable caution to believe that an offense has been committed or is being committed by the person to be arrested." *Johnson v. City of New York,* 940 F.Supp. 631, 636 (S.D.N.Y.1996), *citing Golino v. City of New Haven,* 950 F.2d 864, 870, (2d Cir.1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). Here, plaintiff was arrested after defendant Moritz faxed a copy of a fugitive warrant to the North Carolina defendants. Further, plaintiff has attached a copy of a decision of a North Carolina magistrate to his complaint in which the magistrate specifically found that probable cause existed to arrest plaintiff. *See* Complaint, Exhibit "A". "Plaintiff cannot under the guise of a § 1983 claim, relitigate the existence of probable cause." *Petrenko v. United States,* 859 F.Supp. 647, 649 (E.D.N.Y.1994), *citing Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In any event, § 1983 claims for false arrest or false imprisonment are barred unless the underlying criminal proceedings, in this case the revocation of parole, was terminated in plaintiff's favor. *Roesch v. Otarola,* 980 F.2d 850, 854 (2d Cir.1992) (plaintiff's claims for malicious prosecution and false imprisonment were barred because the underlying criminal proceedings did not terminate in plaintiff's favor); *Cameron v. Fogarty,* 806 F.2d 380, 386–87 (2d Cir.1986), *cert. denied* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987) (a person convicted after a trial of the crime for which he was arrested cannot recover damages on a claim of false arrest). As plaintiff has not alleged that the underlying parole revocation proceedings terminated in his favor, his claims for false arrest and false imprisonment are hereby dismissed with prejudice.

■ Plaintiff alleges that he was unlawfully extradited from North Carolina to New York in violation of his due process rights and the Uniform Extradition Act. However, "while a violation of the Uniform Extradition Act 'may give rise to a cause of action for false arrest or false imprisonment in the asylum state, whose laws were breached,' such a violation does not normally give rise to a deprivation of rights secured by the Constitution or laws of the United States." *Giano v. Martino,* 673 F.Supp. 92, 93 (E.D.N.Y.1987), *aff'd without opinion,* 835 F.2d 1429 (2d Cir.1987), *quoting Raffone v. Sullivan,* 436 F.Supp. 939, 941 (D.Conn. 1977), *remanded without opinion,* 595 F.2d 1209 (2d Cir.1979). Further, plaintiff states that he executed a presigned waiver of extradition as a condition of his parole. Courts have routinely held that such a waiver of extradition "waive[s] any constitutional rights implicated by a return for parole violation without formal extradition proceedings." *Wrenn v. California State Parole,* 1992 WL 112276 at *1 (D.Kan.1992); *see also Pierson v. Grant,* 527 F.2d 161 (8th Cir.1975) (failure to follow extradition procedures in the Uniform Criminal Extradition Act did not subject defendants to liability when plaintiff had signed a prerelease waiver of extradition); *Wysinger v. White,* 1997 WL 94261 at * 3 (D.Kan.1997) (plaintiff relinquished his right to formal extradition proceedings and any constitutional claim based upon the lack of them when he executed a pre-parol waiver of extradition); *Bradley v. Extradition Corporation of America,* 758 F.Supp. 1153, 1157 (W.D.La.1991), *citing Crumley v. Snead,* 620 F.2d 481, 483 (5th Cir.1980) *and Siegel v. Edwards,* 566 F.2d 958, 960 (5th Cir.1979) ("[w]here the fugitive knowingly waives any rights he may have that are inherent in the extradition process he may not recover under section 1983 where those rights are deprived"). Plaintiff has not alleged that his signing of the waiver of extradition was not knowing and voluntary; instead he states that it should not constitute a valid defense to his charges. Plaintiff's reasoning is simply incorrect. For the reasons discussed above, plaintiff's claims concerning his allegedly unlawful extradition are hereby dismissed with prejudice.

■ Plaintiff alleges that defendant Pendergraph allowed the allegedly unlawful extradition proceedings to take place in retaliation for plaintiff's filing a lawsuit about the conditions in the Mecklenburg County Jail.

The United States Court of Appeals for the Second Circuit has held that:

> [w]e agree ... that claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse. Virtually every prisoner can assert such a claim as to every decision which he or she dislikes. If full discovery were to be permitted on every such claim, the result would indeed be chaotic. However, some of these claims may have merit and, where that is the case, the prisoners making them must be accorded the procedural and substantive rights available to other litigants.
>
> The exact process to be followed will vary according to the circumstances of each case and district courts must exercise their sound discretion in determining the nature and amount of discovery to be allowed. The goal, however, is the same in each case: to sift out those claims where further discovery may possibly yield evidence in support of the prisoner's allegations from those where it is, or becomes, evident that no factual basis exists.
>
> For example, a retaliation claim supported by specific and detailed factual allegations which amount to a persuasive case ought usually be pursued with full discovery. However, a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone. In such a case, the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants. A third category of allegations also exists, namely a complaint which alleges facts giving rise to a colorable suspicion of retaliation. Such a claim will support at least documentary discovery.

*Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983). Plaintiff does not offer any details in support of his allegations of retaliation, but rather, makes broad and sweeping allegations. Moreover, the above discussion demonstrates that the extradition proceedings were undertaken properly, and thus the basis of plaintiff's claim is without substance. Accordingly, this Court concludes that plaintiff's claims of retaliation must be dismissed with prejudice.

■ Plaintiff makes numerous claims that he was denied due process at his preliminary and final parole revocation hearings. Plaintiff's claims against the New York State Parole defendants in their official capacities must be dismissed. State defendants are protected by the Eleventh Amendment from legal or equitable claims brought by private parties for alleged constitutional violations. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Yoonessi v. State University of New York*, 862 F.Supp. 1005, 1012 (W.D.N.Y.1994). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Accordingly, plaintiff's § 1983 claims against the New York State Parole defendants in their official capacities are hereby dismissed.

■ Plaintiff has sued Administrative Judge Cummins, Parole Hearing Officer Pamerleau, and Parole Officer Mata for actions undertaken by them with respect to his parole revocation proceedings. The Second Circuit has recently ruled that state parole officers are entitled to absolute immunity in regards to judicial and prosecutorial actions taken with respect to parole revocation hearing. *Scotto v. Almenas*, 143 F.3d 105, 110–13 (2d Cir.1998). Accordingly, defendants Cummins, Pamerleau and Mata are entitled to absolute immunity for their roles in presiding over and presenting plaintiff's parole revocation proceedings, and therefore plaintiff's claims against them are dismissed with prejudice.

■ Even if this were not the case, however, the essence of plaintiff's claims against the defendants discussed above and those against defendants Travis, Low, Graber, Goord, Annucci, Lawrence, Swan, Root, Phillips and Knuth are that his parole revocation proceedings were conducted in an unconstitutional manner and therefore he is presently being improperly detained. The Supreme Court has held, however, that such a claim does not constitute a cognizable cause of action under § 1983.

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Plaintiff does not allege that he has appealed from any determination of the revocation proceeding; nor has he otherwise shown that the parole revocation determination has been invalidated or was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254". *Id.* Accordingly, plaintiff's claim regarding the unconstitutionality of his parole revocation proceedings are not cognizable under § 1983 and his claims regarding the proceedings are therefore dismissed with prejudice.

### CONCLUSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee. Accordingly, plaintiff's request to proceed *in forma pauperis* is hereby granted and, for the reasons discussed above, the complaint is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e). Plaintiff is forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. § 1915(e)(2)(B). *See* 28 U.S.C. § 1915(g).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is hereby denied. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

### ORDER

IT HEREBY IS ORDERED, that the plaintiff's request to proceed *in forma pauperis* is granted;

FURTHER, that plaintiff's complaint is deemed to consist of his original complaint (Docket # 1) and his amendment to the complaint (Docket # 3);

FURTHER, that the complaint is dismissed with prejudice;

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied; and

FURTHER, that the Clerk of the Court is directed to docket this dismissal as a strike for purposes of 28 U.S.C. § 1915(g).

SO ORDERED.