**Jacob TRZASKOS, by his next friend, Bonnie TRZASKOS, Plaintiff,**

v.

**Jay ST. JACQUES, Defendant.**

**No. 3:97 CV 565(GLG).**

United States District Court, D. Connecticut.

Feb. 17, 1999.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Pursuant to Federal Rule of Civil Procedure 56, defendant Jay St. Jacques moves for summary judgment. For the reasons discussed below, defendant's motion (**Document # 16**) is GRANTED.

## BACKGROUND

We primarily rely on the facts set forth in defendant's Local Rule 9(c)1 Statement because plaintiff failed to submit a Local Rule 9(c)2 Statement. Under Local Rule 9(c)1, a moving party must submit a "concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." The opposing party must then submit a statement under Local Rule 9(c)2 indicating whether he or she admits or denies the facts in the moving party's Local Rule 9(c)1 Statement. The Local Rule 9(c)2 Statement must also include a separate list of each issue of material fact as to which it is contended there is a genuine issue to be tried. If the opposing party does not submit a Local Rule 9(c)2 Statement, all facts in the moving party's Local Rule 9(c)1 Statement are deemed admitted. Local Rule 9(c)1; *see Kusnitz v. Yale Univ. Sch. of Med.*, No. 3:96–cv–2434, 1998 WL 422903, at *1 (D.Conn. July 16, 1998).

Moreover, we rely on defendant's sworn affidavit which is an exhibit to the motion papers. Not only did plaintiff not submit a Local Rule 9(c)2 Statement, but he also failed to submit any sworn statements or other proper factual materials in opposition to defendant's motion. Fed.R.Civ.P. 56(e). Thus, plaintiff cannot now claim that there are factual issues to be tried. *United States v. All Right, Title and Interest in Real Property and Appurtenances*, 77 F.3d 648, 657–58 (2d Cir.) (stating that a nonmovant deliberately bypassed the opportunity to argue that there were genuine issues of fact to be tried when he failed to submit the equivalent of a Local Rule 9(c)2 Statement, any sworn affidavits, deposition testimony, answers to interrogatories, or admissions on file), *cert. denied*, 519 U.S. 816, 117 S.Ct. 67, 136 L.Ed.2d 28 (1996). Nevertheless, to the extent possible, we construe the facts in a light most favorable to plaintiff and resolve all ambiguities and draw all reasonable inferences against defendant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

At the time of the events at issue, plaintiff Jacob Trzaskos was the seventeen year-old son of a West Hartford police officer. On March 2, 1997, plaintiff and four other minors were smoking marijuana

in a 1968 classic, bright red Oldsmobile Cutlass. Trzaskos Dep. of 8/17/98, Def.'s Mem. Ex. 3, at 38–39. Two West Hartford police officers stopped the car and investigated the incident. They were subsequently assisted by defendant, a Sergeant with the West Hartford Police Department. Only the driver of the car, a seventeen year-old female, was arrested on charges of possessing marijuana. The other passengers were not charged and were allowed to leave the scene.

On the next night, Sergeant St. Jacques was working as a patrol supervisor when he observed the 1968 Cutlass being driven on a public street in the Town of West Hartford. Defendant claims that he recognized the car because of its unique characteristics and color. He also knew that the girl driving the car on the previous night had been arrested for possessing marijuana. Although defendant could not see any of the car's occupants on the night in question, he suspected that some of the individuals were the same as the occupants from the night before. Based on what happened the night before, Sergeant St. Jacques thought that the driver and the occupants were about to purchase more drugs. Defendant began following the car to see how it was being operated and to see where it was going. He followed the car as it crossed the West Hartford town line into the City of Hartford. The car then stopped at a liquor store, and defendant observed one of the passengers go into the store and return to the car carrying a large paper bag.

Based on his knowledge and law enforcement experience, and based on his belief that none of the car's occupants were of the legal drinking age, defendant believed that the occupants were in possession of alcohol in violation of Connecticut General Statutes § 30–89(b). He was also concerned because it was snowing steadily and the road conditions were becoming worse. Accordingly, defendant stopped the car after it crossed back into West Hartford. He confirmed his suspicion that the driver was the same girl who had been arrested on the night before. He also recognized plaintiff as one of the passengers. When he asked the occupants whether there was beer in the car, they revealed a paper bag which contained a thirty-pack container of bottled beer and a bottle of whiskey. Defendant then determined that all of the car's occupants were under the legal drinking age. Defendant decided not to call for assistance due to an unrelated, ongoing burglary investigation which occupied other West Hartford police officers. Instead, he asked the driver and the occupants to drive to the West Hartford Police Department and meet him there.

Upon arriving at the station, defendant directed the youths to wait in the front, public lobby. With the exception of one fifteen year-old juvenile, defendant intended to issue summonses to the minors and release them to their parents' custody. Sergeant St. Jacques then began calling the parents, including plaintiff's whose father was on duty that night. When Officer Trzaskos arrived, he refused to take custody because he insisted that his son remain in jail overnight.

At the time, it was (and still is) a policy of the West Hartford Police Department to hold sixteen and seventeen year-old minors for court if a parent or guardian is unable or unwilling to take custody of them. Accordingly, plaintiff was taken to the lock-up cell, but he was not fingerprinted, photographed, nor strip searched. He was given food and a blanket, and he stayed in a cell adjacent to one of his friends, who was also a passenger and whose parents wanted him to spend the night in jail. There were no other detainees at the police station that night. Plaintiff was released the next morning.

## DISCUSSION

Several weeks after the incident in question, plaintiff filed this suit against defendant in his individual capacity pursuant to 42 U.S.C. § 1983 claiming that defendant

violated his Constitutional rights to be free from unreasonable seizures, false arrest, and malicious prosecution. Defendant argues that all of his actions were legal because he had probable cause to make plaintiff's arrest. He further contends that he is entitled to qualified immunity. Because we find that, at a minimum, defendant is entitled to qualified immunity, we do not discuss the substance of plaintiff's Fourth Amendment claims.

 In a section 1983 case, a municipal officer performing discretionary functions may be shielded from liability in his individual capacity based on qualified immunity. *Shechter v. Comptroller of New York,* 79 F.3d 265, 268–69 (2d Cir.1996); *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In cases such as this one involving clearly established rights, the entitlement to qualified immunity generally turns on the particular facts of a case. *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). Where the factual record is not in serious dispute, as is the situation here, it is preferable for a court to decide the qualified immunity issue at the pretrial stage. *Warren v. Dwyer,* 906 F.2d 70, 76 (2d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990); *see Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992) (discussing the Supreme Court's approval of the use of summary judgment on a qualified immunity claim).

 The entitlement to qualified immunity does not depend on the lawfulness of an official's actions, but on whether it was objectively reasonable for the officer to believe he or she acted in accordance with existing law. *Anderson v. Creighton,* 483 U.S. 635, 644, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, defendant must show that the facts alleged in the complaint are such that "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was

acting in a fashion that did not clearly violate an established federally protected right." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (citations and internal quotations omitted). Generally, a municipal officer's actions are considered objectively unreasonable "when no officer of reasonable competence could have made the same choice in similar circumstances." *Id.* at 420–21.

 It is well-settled that an officer must have reasonable suspicion of criminal activity to justify a stop of a suspect. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under the reasonable suspicion standard, an officer must be able to articulate something more than an "inchoate and unparticularized suspicion or hunch." *Id.* at 27, 88 S.Ct. 1868. In this case, we find that reasonable officers could have concluded that Sergeant St. Jacques had reasonable suspicion for stopping the car and questioning the occupants. On the night at issue, Sergeant St. Jacques observed a unique vehicle—a bright red, 1968 Oldsmobile Cutlass—which had been at the scene of a marijuana-related arrest less than 24 hours earlier. Although he could not identify the car's occupants, he thought it likely that they were the same minor individuals from the night before. Believing that the car was about to be involved in another drug-related incident, defendant followed the car as it traveled from West Hartford to the City of Hartford. The car then stopped at a liquor store. One of the passengers entered the liquor store and left a few minutes later with a brown paper bag. Based on his knowledge that the car's occupants from the previous night were all under the legal drinking age, Sergeant St. Jacques was concerned that an illegal purchase of alcohol may have been made and that the remaining occupants may have violated a statute prohibiting possession of alcohol by minors. Accordingly, he pulled the car over after it crossed back into West Hartford. On these facts, we find that reasonable officers would have made a *Terry* stop

in order to further investigate the situation.

Moreover, we find that reasonable officers could have concluded that Sergeant St. Jacques had probable cause to arrest the car's occupants. Upon stopping the car, defendant recognized at least the female driver and plaintiff. He then found evidence of a criminal violation. He determined that all of the occupants were under the legal drinking age and that the occupants had in their possession a thirty-pack container of bottled beer and one bottle of whiskey. Accordingly, Sergeant St. Jacques decided to issue summonses to all the occupants, except for the fifteen year-old juvenile, for violating Connecticut General Statutes § 30–89(b) which prohibits the public possession of liquor by minors. The driver was also issued a Department of Motor Vehicles warning ticket for violating Connecticut General Statutes § 14–111a, "Possession of Alcoholic Liquors in Motor Vehicles by Underage Persons."

Lastly, we find that Sergeant St. Jacques is entitled to qualified immunity in connection with plaintiff's overnight detention. Upon determining that a violation of section 30–89(b) occurred, Sergeant St. Jacques asked the driver and the passengers to meet him at the West Hartford Police Station for the purpose of issuing them summonses. At the police station, he intended to simply issue them summonses and release them to their parents' custody. However, plaintiff's father, a West Hartford police officer, refused to take custody and instead wanted his son to spend the night in jail. Based on the police department's policy of holding sixteen and seventeen year-old minors for court if a parent or guardian is unable or unwilling to take custody of them, we find that reasonable officers would have believed Sergeant St. Jacques acted in accordance with the existing law.

## CONCLUSION

For the foregoing reasons, we find that Sergeant St. Jacques is entitled to quali-fied immunity due to his reasonable belief in the legality of his actions. Consequently, we GRANT defendant's motion for summary judgment **(Document # 16).** The Clerk of the Court is directed to enter judgment in defendant's favor and close the case.

**SO ORDERED.**