**Joan WILLIS, Plaintiff**

v.

**ANTHEM BLUE CROSS & BLUE SHIELD OF CONNECTICUT, Defendant**

**No. 3:00CV00279(EBB).**

United States District Court, D. Connecticut.

Nov. 1, 2001.

Caleb McIvor Pilgrim, New Haven, CT, for Joan Willis.

Diana Garfield, Kainen, Escalera & McHale, PC, Hartford, CT, for Joan Willis.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BURNS, Senior District Judge.

#### INTRODUCTION

Plaintiff Joan Willis ("Plaintiff" or "Willis"), brings this Complaint against her

former employer, Anthem Blue Cross & Blue Shield of Connecticut ("Defendant" or "Anthem"). Willis alleges violations of Title VII, based on race and gender; violation of the Americans With Disabilities Act ("ADA"); violation of the Age Discrimination in Employment Act ("ADEA"); and breach of an implied employment contract. Anthem now moves for summary judgment on these claims.

## STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The facts are culled from the·Complaint, the moving parties' papers and exhibits thereto and Defendant's Local Rule 9(c) Statement,

Local Rule 9(c)(1) imposes on the moving party the requirement of annexing to the motion for summary judgment a "separate, short and concise statement of material facts which are not in dispute." Local Rule 9(c)(2) places a parallel burden upon the resisting party to include a "separate, short and concise statement of material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 9(c)(1) provides that the facts set forth by the moving party in accordance with that Rule shall be deemed admitted unless controverted by the opposing party in accordance with Rule 9(c)(2). Local Rule 9(c)(3) makes clear that these requirements are in addition to those of Fed. R.Civ.P. 56.

The purpose of a Rule 9(c)(2) Statement is to make affirmative statements which will aid and inform the Court. Quite naturally, the complete failure to comply with the requirements of such a rule would be grounds for summary judgment in and of itself. *See Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984)(no filing in compliance with local rule; grant of summary judgment); *Wyler v. United States*, 725 F.2d 156, 158 (2d Cir.1983)(affirming grant of summary judgment); *Nucifora v. Bridgeport Board of Education*, 3:99–CV–00079(EBB) (D. Conn. June 29, 2001)(granting summary judgment); *N.S. v. Stratford Bd. Of Educ.*, 97 F.Supp.2d 224 (D.Conn.2000)(granting summary judgment); *Booze v. Shawmut Bank, Connecticut*, 62 F.Supp.2d 593 (D.Conn.1999)(granting summary judgment); *Trzaskos v. St. Jacques*, 39 F.Supp.2d 177 (D.Conn.1999)(granting summary judgment); *Kusnitz v. Yale University School of Medicine*, 3:96–CV–02434 (EBB), 1998 WL 422903 (D.Conn. July 16, 1998)(granting summary judgment); *Corn v. Protective Life Ins. Co.*, 1998 WL 51783 (D.Conn. February 4, 1998)(granting summary judgment); *Peterson v. Saraceni*, 1997 WL 409527 (D.Conn. July 16, 1997)(granting summary judgment); *Scianna v. McGuire, et al.*, 1996 WL 684400 (D.Conn. March 21, 1996)(granting summary judgment); *Burrell v. Lucas*, 1992 WL 336763 (D.Conn. Oct.14, 1992)(summary judgment granted) *Soto v. Meachum*, 1991 WL 218481 (D.Conn. August 28, 1991)(granting summary judgment). Plaintiff has completely failed to comply with this Rule, in that no Rule 9(c)(2) Statement of any kind was filed by her. However, in the interests of judicial fairness, the Court will briefly consider the issues in this case and decide the case on the merits. However, all facts set forth in Defendant's complying Rule 9(c)(1) Statement will be deemed admitted by Plaintiff for purposes of the decision on this Motion.

Plaintiff was hired by Anthem on March 10, 1997 as an Office Services Operator in the Office Services Department, second shift. She had filled out an employment application on February 18, 1997. That application contained statements in distinct and highlighted print that nothing in the application created a contract of employment or any rights in the nature of a

contract of employment. Willis signed this disclaimer page in the application. Exhibit 2.

Willis testified in her deposition that she received no written guarantees as to how long she would be employed and was not told that she would only be terminated if she did something wrong. Deposition at p. 59. She further testified only her offer letter and Anthem's employee handbook set out the terms of her employment. *Id.* at p. 60–61. The Anthem handbook in effect when Willis was hired contained a clear and highlighted "Notice and Disclaimer" stating that the contents of the handbook did not constitute the terms of a contract of employment. Exhibit 5 at p. 6.

Willis contended in her deposition that the handbook and a statement by one manager that she would do well with the company constituted promises to retain her as an employee. Deposition at 59, 85.

On February 18, 1998, her supervisor, Linda DeBernardo, gave Willis an overall performance rating of "met measurements". Exhibit 5. Resultingly, on March 2, 1998, Willis received a merit salary increase and a promotion to the job of Office Services Technician in the Office Services Department, second shift. Her salary increased in the new position, as it did again within the timeframe of her employment with Anthem.

The Office Services Department is responsible for producing and handling mail, benefit checks and printed materials to subscribers. The outgoing mail volume of the Office Services Department exceeds twelve million pieces of mail per year; the department does over forty million print impressions and processes benefit checks exceeding one billion dollars annually. Exhibit 7.

In her former position, Willis was responsible for the smooth and efficient operation of intelligent mailing systems, mainframe printing equipment, barcode pre-sorting and additional printing and mail-related devices. The major challenges for an Office Services Technician are to effectively operate all intelligent mail inserting equipment, operate and monitor mainframe printing equipment to produce timely reports, benefit checks and other computer generated printed materials within tight daily time frames, and to operate a barcode pre-sorter to ensure postage savings. Exhibit 7. Willis agreed that those were her job responsibilities. Deposition at p. 62–63. Her job responsibilities also included feeding mail into big machines for sorting and retrieving mail from the machines. She would constantly be in motion and lifting. She had to lift and move mail trays (20 lbs), tubs (20–40 lbs) and push huge rolls of paper weighing hundreds of pounds for use on the machines. *Id.* at p. 64, 68–69.

On March 12, 1998, Plaintiff fell at work, injuring her shoulder and her face. Between the date of her injury, and her termination of October 23, 1998, Plaintiff treated with at least six doctors, including orthopedists, ophthalmologists, neurologists, and rehabilitation specialists. Deposition at p. 72–73.

From the time of her injury to her termination, Willis had standing/walking, and driving limitations. She could not lift, climb, push, pull, reach, or squat. She was, however, allowed to occasionally bend or twist. As of the date of her termination, she still had these restrictions. Exhibit 8, Medical reports; Deposition at p. 72. She acknowledged that she could not do the job that she had been hired to do because of her physical limitations. Deposition at p. 31. Rather, the other two employees in the Department and her supervisor assumed the burden of doing the essential elements which Willis could not do, in addition to their own duties. *Id.* at 70.

For the next seven months, her supervisor created work within Willis' restrictions, such as stuffing envelopes, posting mail and computer work. Willis testified that she was also given work to do by hand that was usually done by machine. She was consistently told to " do the best she could do." She also conceded that Anthem tried to give her help in doing her job and gave her time off for medical appointments and rehabilitation treatments. *Id.* at p. 70–72, 95–97.

On September 28, 1998, Anthem had an occupational therapist, one Virginia Ellis, analyze the essential physical demands of Plaintiff's position. Her report concluded that:

"Essential physical demands include frequent handling, reaching to > 90 degrees shoulder forward flexion, lifting trays to set up a variety of mailing machines. Occasional-frequent lifting of mail trays, positioning on rack from overhead +/-2 ft. from floor. Lifting, bending, reaching and handling are essential. Repetitive grasping required at multiple stations. Flexibility, good body mechanics and proper lifting techniques are essential."

Exhibit 9.

On October 5, 1998, one of Willis' doctors reported her "terrible right shoulder pain." On October 12, 1998, her limitations included lifting (6–10 lbs), carrying (6–10 lbs.), pushing/pulling and no forward reaching greater than fifteen minutes per hour. Exhibit 10.

On October 23, 1998, Plaintiff was terminated by one Jeff Gworek, the manager of the Office Services Department. Her termination form stated: "Employee has been on limited duty for seven months and unable to perform required job functions.

Timeframe for return to full functionality cannot be determined." Exhibit 11.[1] Gworek has also averred that there were no positions, vacant or filled, on any shift in the Office Services Department which Willis could have done, given her restrictions in the fall of 1998. Further, he averred that he had kept her employed for seven months after her accident only by stripping away all of the jobs she could not do, including essential job duties. He let her do work by hand that was usually done by machine—stuffing envelopes, minimal PC work and the taking of meter readings on the equipment, thus collecting together a variety of tasks within her restrictions, *i.e.*, by creating a special job for her. He finally determined that he could not do this indefinitely. Exhibit 4.

The Manager of Associate Relations averred that, at any time during the seven months following her accident, Plaintiff had access to all open jobs throughout Anthem, via the human resources posting system. She could have applied for any job for which she had the minimum qualifications. Exhibit 5. Although Willis claims that Anthem should have kept her on doing whatever jobs she could do, Deposition at p. 55,56, no evidence exists that Willis ever took advantage of the human resources opportunities.

Plaintiff acknowledged that she still had work restrictions when she left Anthem and that they have continued to the present. She still has the same restrictions and can only partially pull her right arm up. Deposition at p. 20–21,31,74–75.

The only evidence that Plaintiff has proffered that she was terminated due to her race was that "she had to prove herself and push hard to get hired or promotions." In fact, she was hired within three weeks

---

**1.** In fact, on November 16, 1998, her orthopedist eliminated *any* heavy lifting and strenuous work.

of filling out her job application and was promoted with a salary increase after receiving her first job performance review. She also received a second raise in salary. In contradistinction to the allegations in the Complaint, Plaintiff testified that no one in her work area ever made negative comments about African–Americans. Deposition at 43–44.

Plaintiff also alleges that she was terminated because she was a woman, for the same reasons as above. However, she admitted in her deposition that her supervisor was a woman and that everyone on her shift, save one, were woman. She acknowledged in· her deposition, however, that the one male employee never received special treatment because he was a man. Deposition at 47–50.

Finally, Willis contends that she was terminated due to her age. She admitted that her only evidence was, again, her belief that she had to work harder and prove herself more. Deposition at p. 50. This claim is undermined for, first, the same reasons as set forth above, and, second, that she was fifty-one years of age when she was hired.

Willis stated that a younger deaf employee was kept on in her department despite having "behavior problems". Willis next acknowledged, however, that this person was a deaf-mute with whom she had never had any difficulties. Deposition at p. 57. Further, Gworek averred that this employee was a very fine worker who could do all the essential functions of her first-shift job. Her other example of age discrimination was that of a younger person with a drug problem being kept on. Gworek again averred that, several years prior to her employment at Anthem, this woman· had voluntarily sought the assistance of an Employee Assistance Program and freed herself of her substance abuse problems. He further stated that she is a good worker who can do all the essential elements of her job and has advanced to a leadership position at Anthem.

Gworek has averred that the sole reason he decided to terminate Willis was based on her inability to do most of the job tasks in her position.

## LEGAL ANALYSIS

### I. The Standard of Review

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). See also Anderson v. Liberty Lobby, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). Although the moving party has the initial burden of establishing that no factual issues exist "[o]nce that burden is met, the opposing party must set forth specific facts demonstrating that there is a genuine issue for trial." Sylvestre v. United States, 771 F.Supp. 515, 516 (D.Conn.1990).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322–23, 106 S.Ct. 2548. Accord, Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d. Cir.1995)(movant's burden satisfied by showing if it can point to an absence of evidence to support an essential element of

nonmoving party's claim). In this regard, mere assertions and conclusions of the party opposing summary judgment are not enough to defend a well-pleaded motion. *Lamontagne v. E.I. DuPont de Nemours & Co.,* 834 F.Supp. 576, 580 (D.Conn.1993), *aff'd* 41 F.3d 846 (2d Cir.1994).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party...." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249–52, 106 S.Ct. 2505 (scintilla of evidence in support of plaintiff's position insufficient; there must be evidence from which a jury could reasonably find in his favor). *See also, Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The Second Circuit has held that summary judgment is appropriate in certain discrimination cases, regardless that such cases may involve state of mind or intent. "The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985). *See Shumway v. United Parcel Service, Inc.,* 118 F.3d 60 (2d Cir.1997)(upholding grant of summary

judgment for defendant in Title VII sex discrimination case). The Supreme Court has recently reiterated that trial courts should not treat discrimination differently from other questions of fact. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson* 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original).

## II. *The Standard As Applied*

### A. *The ADA*

The ADA prohibits covered employers, such as Defendant herein, from discriminating against an otherwise qualified employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C § 12112(a). The statute defines "disability" as "(a) a physical or mental impairment that substantially limits one of more of life's major activities; (b) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

In a case under the ADA, this Court is to apply the now well-settled burden-shifting framework of *McDonnell Douglas v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817,

36 L.Ed.2d 668 (1973) in order to determine whether summary judgment is warranted. *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir.2000).

■ First, the Plaintiff must establish a *prima facie* case of discrimination by showing that: (1) she was an individual with a disability within the meaning of the statute; (2) Anthem had notice of her disability; (3) with reasonable accommodation she could perform the essential functions of her job; and (4) Anthem refused to make such accommodation. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir.2000); *Mitchell v. Washingtonville Cent. School Dist.*, 190 F.3d 1, 6 (2d Cir. 1999).

Ordinarily, this is not the end of the story. If the plaintiff succeeds in setting forth her *prima facie* case, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the employment action. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Should the Defendant set forth such a non-discriminatory reason, the presumption arising from the *prima facie* case drops from the picture. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). For the case to continue, the Plaintiff must then come forward with evidence that the Defendant's proffered non-discriminatory reason is a mere pretext for discrimination. The Plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [Defendant] were false and that more likely than not [discrimination] was the real reason for the [employment action]'". *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996), *quoting Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994).

■ In the present case, the Court finds that it is not necessary to perform this burden-shifting analysis, as it finds that Plaintiff has failed to set forth a *prima facie* case under the third and fourth prongs of *Parker*. It is beyond cavil that Anthem went out of its way to more than reasonably accommodate her disability and, as noted above, find her jobs within her department which she was physically capable of doing. Other employees, including her supervisor, were required to do the majority of her work, in addition to their own.

Although Plaintiff claims that Anthem should have had another job for her, she offers no evidence that she requested another job and nothing but her subjective opinion that there must have been another vacant job which she could have done. Anthem maintains a job posting bulletin board accessible to all employees. Exhibit 5. If there existed an opening for which Plaintiff believed she was qualified, within her medical restrictions, she could have bid on the position. She offers no evidence whatsoever that such a position existed or that she bid for any vacant position.

■ " 'Reasonable accommodation' does not mean elimination of any of the job's essential functions." *Gilbert v. Frank*, 949 F.2d 637, 644 (2d Cir.1991)(affirming district court's refusal to find that plaintiff had made *prima facie* case that a reasonable accommodation meant shifting physical labors which plaintiff could no longer do, and which were the essential functions of his job, to co-workers). It follows, then, that Anthem was not required to accommodate Plaintiff by eliminating any, or, in her case, the majority, of the essential functions from her job. *Accord, Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 140 (2d Cir.1995). Further, "redefinition of essential functions of a job exceeds

reasonable accommodation." *Southeast-ern Community College v. Davis*, 442 U.S. 397, 398, 407–08, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), *cited in Bradley v. U. of Tex., M.D. Anderson Cancer Center*, 3 F.3d 922, 925 (5th Cir.1993).[2]

■ An individual who cannot perform the essential functions of a job, either with or without reasonable accommodation assistance, is not a "qualified person with a disability" under the ADA. *See Borkowski*, 63 F.3d at 140. Inasmuch as the evidence is manifestly clear that Anthem met—indeed exceeded—its responsibilities of reasonable accommodation under the ADA, summary judgment in its favor is hereby granted on this claim.

## B. *Gender, Race, Age Discrimination*

■ The Court finds that these claims border on the frivolous. As Plaintiff testified at her own deposition, under oath, she had no evidence at all to set forth these claims. Her only "evidence" as to her gender, race, and age claims was her *subjective* opinion that she "believed that she had to prove herself and push hard to be hired and get a promotion." As noted in the Statement of Facts, Plaintiff was hired within three weeks of her application for employment. During her one and one-half year tenure at Anthem, she received one promotion and two pay raises, having received positive job assessments. She further testified that she never heard any racial remarks about African–Americans and the one man who worked in her Department was not treated differently than the four women, including the female supervisor, in her Department.

Plaintiff's non-existent showing of "admissible evidence" under Rule 56 leads the Court to grant summary judgment on

her Title VII and ADEA claims. Again, as to a *prima facie* case of either, or both, Plaintiff was required to demonstrate and prove at trial that (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Weinstock v. Columbia University*, 224 F.3d 33 (2d Cir.2000).

The Court will not reiterate its findings under the ADA, because they are identical with respect to the Title VII and ADEA claims. Plaintiff fails to set forth a *prima facie* case because she was not qualified for her position and there exists not one iota of evidence giving rise to an inference of discrimination, even from Plaintiff's sworn testimony itself.

## C. *Implied Contract*

It is indisputable that Plaintiff was an employee-at-will of Defendant. Her job application, which she read and signed, and the Employee Benefit Handbook which sets forth her employment relationship with Anthem, boldly state in capital and highlighted notices that *nothing* in either document may be construed as a contract of employment among the parties thereto.

■ Under Connecticut law, "[t]o survive a motion for summary judgment, the plaintiff [has] the burden of presenting evidence that the defendant has *agreed* to some form of contractual commitment. A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds of the parties." *Burnham v. Karl & Gelb, P.C.*, 50 Conn.App. 385, 388–89, 717 A.2d 811 (1998)(emphasis added).

---

**2.** As does Willis, Bradley contended that the hospital should have given him another job. However, again like Willis, Bradley sought no other job through the hospital's job posting.

Resultingly, the contention was rejected by the *Bradley* Court, holding that the duty to find a disabled employee another job was not a reasonable accommodation.

Willis presents no credible evidence under this stringent standard. Her sole evidence is a statement by one manager that she would do well in the company and an unproportional and one-sided reading of the Employee Handbook allegedly led Plaintiff to understand she had been promised to be retained as an employee.

Willis testified that only her offer letter and the Employee Handbook set out the terms of her employment. Defendant's Local Rule 9(c) Statement, Exhibit 3, p. 60. However, her employment application, just above her signature, states in capital letters and bold-faced print that "**NOTHING IN THIS APPLICATION OR IN ANY PRIOR ORAL OR WRITTEN STATEMENT IS INTENDED TO CREATE ANY CONTRACT OF EMPLOYMENT OR TO CREATE ANY RIGHTS IN THE NATURE OF A CONTRACT OF EMPLOYMENT.**"

Similarly, the Employee Handbook, on the very first page, reads in pertinent part: **NOTICE AND DISCLAIMER ... THE CONTENTS OF THE HANDBOOK DO NOT CONSTITUTE THE TERMS OF A CONTRACT OF EMPLOYMENT... Employment at Blue Cross & Blue Shield of Connecticut, Inc. is on an at-will basis. This means that the employment relationship may be terminated at any time, with or without notice... Any written or oral statement to the contrary by a supervisor, corporate officer or other agent of Blue Cross & Blue Shield of Connecticut, Inc. is invalid and should not be relied upon by any prospective or existing employee.**

Finally, Willis testified in her own deposition that she never had any written promises of continued employment and was never told that she would only be fired if she did something wrong. Deposition at p. 59. As in *Burnham,* there did not exist any meeting of the minds between Plaintiff and Defendant regarding the existence of an employment contract. There exist no genuine issues of material fact that a reasonable jury could disagree on under the law as it would be presented to them. Plaintiff was, at all times, an at-will employee, who could be terminated at any time, with or without, justification.

### *CONCLUSION*

For all of the reasons set forth herein, Plaintiff fails to set forth any genuine issues of material fact upon which she would bear the burden at a trial of this matter. Accordingly, Defendant's Motion for Summary Judgment [Doc. No. 19] is hereby GRANTED. The Clerk is directed to close this case.

SO ORDERED.