Myriam SANCHEZ, et al Plaintiffs,

v.

**THE UNIVERSITY OF CONNECTICUT HEALTH CARE and Leslie S. Cutler Defendants.**

No. 398CV01933(GLG).

United States District Court, D. Connecticut.

Dec. 1, 2003.

coming eligible for worker's compensation coverage. The court does not resolve this issue here.

See also, 292 F.Supp.2d 412, 2003 WL 22908137, 292 F.Supp.2d 398, 2003 WL 22908144, 292 F.Supp.2d 425, 2003 WL 22911224.

John Rose, Jr., Levy & Droney, P.C., Farmington, CT, for Plaintiffs.

Carla R. Walworth, Mary C. Dollarhide, Sarah Elizabeth Graves, Paul, Hastings, Janofsky & Walker, Stamford, CT, William N. Kleinman, Attorney General's Office, Farmington, CT, for Defendants.

Peter M. Schultz, Paul, Hastings, Janofsky & Walker, Stamford, CT, for Defendant/Movant.

*RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

GOETTEL, District Judge.

Pending before the court is defendants' motion for summary judgment on all claims asserted by plaintiff Myriam Sanchez in her first amended complaint. For the reasons stated below, the court *grants* defendants' motion for summary judgment (Doc. # 93) on all seven counts.

*I. Procedural History and Facts*

On February 23, 1999, plaintiff Myriam Sanchez [1] ["Sanchez"], and three co-work-

---

1. The other plaintiffs are Elsa Delrio, Yvonne Ozenne, and Goffrey Oliver. The court will

ers filed an amended seven-count complaint against the University of Connecticut Health Center ["Health Center"] and Leslie S. Cutler ["Dr. Cutler"]. In the first count, plaintiff alleges that the Health Center engaged in hiring and employment discrimination based on race, color and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and state law,[2] without specifying which law. In the second count, plaintiff alleges that the Health Center denied her equal rights under the law in violation of 42 U.S.C. § 1981. The third count asserts a claim against Dr. Cutler—violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983. In the fourth count, plaintiff alleges that Dr. Cutler's discriminatory actions violated plaintiff's due process rights. In the fifth count, plaintiff asserts a breach of implied contract claim against the Health Center. In the sixth count, plaintiff asserts a claim of intentional infliction of emotional distress against the Health Center. In the seventh count, plaintiff alleges that the Health Center created a hostile work environment. Plaintiff seeks both compensatory and punitive damages. (Pl.'s Am. Compl.).

■ As an initial matter, defendants, in their reply brief, contend that plaintiff has failed to comply with the District of Connecticut's local rules regarding motions for summary judgment. A party opposing a motion for summary judgment shall submit a document entitled "Local Rule 56(a)2 Statement," which must include "a list of each issue of material fact as to which it is contended there is a genuine issue to be tried." D. Conn. L. Civ. Rule 56(a)2. "Each statement of material fact in a Local Rule 56(a) Statement by a movant or opponent must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. L. Civ. Rule 56(a)3. Defendants complain that plaintiff's submission of twenty-five material facts does not contain any citation to either an affidavit of a witness competent to testify as to the facts at trial or other admissible evidence pursuant to the local rules. (Defs.' Reply Br. at 4). Thus, defendants conclude that all the material facts set forth in their Local Rule 56(a)1 Statement should be deemed admitted and that the court should grant summary judgment in their favor. (*Id.*).

In reviewing the parties' submissions, the court agrees that plaintiff's Local Rule 56(a)2 Statement does not comply with the local rules. *See* Doc. # 119. On October 20, 2003, plaintiff also filed a "Local Rule 9(c)2 statement" which indicates which of each of the twelve facts asserted by defendants is admitted or denied. *See* Doc. # 130.

In accordance with the Local Rule, this court has repeatedly held that the opposing party's failure to submit a timely Local Rule 56(a)2 Statement will result in the court's deeming admitted all facts set forth in the moving party's Local Rule 56(a)1 Statement. *See, e.g., Booze v. Shawmut Bank,* 62 F.Supp.2d 593, 595 (D.Conn. 1999); *Trzaskos v. St. Jacques,* 39 F.Supp.2d 177, 178 (D.Conn.1999). Likewise, the court will deem admitted for purposes of this motion all facts set forth in defendants' Local Rule 56(a)1 Statement. Nevertheless, because the court is considering these facts in ruling on a motion for summary judgment, they will be

---

address defendants' motions for summary judgment against each plaintiff's claims in separate rulings.

**2.** Defendants assume this to be Conn. Gen. Stat. § 46a–70, the Connecticut Fair Employment Practices Act ["CFEPA"]. Plaintiff did not raise any objection to this assumption in her opposition briefs.

viewed in the light most favorable to plaintiff with all reasonable inferences drawn in favor of plaintiff, as the non-moving party.

A brief summary of the factual background is in order. Defendant Health Center is an educational, research, clinical and health care facility comprised of nine distinct divisions. (Defs.' Statement at ¶ 1). Defendant Dr. Cutler was the Chancellor and Provost for Health Affairs at the Health Center from February 1992 through June 2000; he currently is a part-time Business Development Officer at the University of Connecticut's Center for Science and Technology Commercialization. (*Id.* at ¶ 2). Plaintiff Sanchez, a Hispanic female and current employee, commenced her employment with the Health Center in May 1988 and has been continuously employed by the Health Center since that date. (*Id.* at ¶ 3). At all relevant times, plaintiff has held the position of "Nurse's Aide." (*Id.* at ¶ 4).

Plaintiff applied for the position of Medical Assistant at the Health Center; this position required applicants to be "Certified Health Assistants" with radiology or gastroenterology experience. Plaintiff is not a Certified Health Assistant. (*Id.* at ¶ 5). Plaintiff applied for the position of Medical Lab Technician which required two years related experience working in a general laboratory. Plaintiff lacked the required experience. (*Id.* at ¶ 6). Plaintiff also applied for the position of Clinical Office Assistant, but withdrew her application. (*Id.* at ¶ 7).

The word "retaliation" does not appear in either Count One or Count Seven of the Complaint. (*Id.* at ¶ 8). At her deposition, plaintiff testified that she experienced the following acts of retaliation: 1) a co-worker pulled her aside and asked if there was going to be a "blacks against whites" riot at the Health Center; 2) co-workers have slammed wheel chairs, stretchers and cassette films in her presence; 3) she has

been asked to move "heavier" patients on rolling stretchers by herself; 4) a co-worker stated in plaintiff's presence that she wished a hurricane that was over Puerto Rico would "wipe out the island from the map" and that "we could do without those people;" and 5) she has been relieved of her responsibility for ordering stock and supplies. (*Id.* at ¶ 9).

While working at the Health Center, plaintiff heard the following: 1) a comment by a co-worker who stated in September 1995 that she wished a hurricane that was over Puerto Rico would "wipe out the island from the map" and that "we could do without those people;" 2) a one-time comment by a co-worker in 1995 that "they should put Puerto Ricans on a plane and send them back to Puerto Rico;" and 3) statements made in plaintiff's presence by a nurse in the mid 1990's referring to Health Center patients as "low life, pieces of shit, scum sucking dogs, welfare recipients." (*Id.* at ¶ 10). Dr. Cutler was never plaintiff's supervisor, but plaintiff named him as a defendant because he was the head of the Health Center. (*Id.* at ¶¶ 11 & 12).

## II. Standard of Review

The standard for summary judgement is well established. The moving party is entitled to summary judgment if it demonstrates that there is no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III. Discussion

#### A. Eleventh Amendment

■ In their memorandum of law in support of their motion for summary judgment, defendants contend that plaintiff's CFEPA claim in Count One, the § 1981 claim in Count Two, the breach of implied contract in Count Five and the claim of intentional infliction of emotional distress in Count Six, all against the Health Center, are barred by the Eleventh Amendment. (Defs.' Mem. at 7).

Surprisingly, plaintiff does not address this argument in her memorandum in opposition to defendants' motion. The court notes that in both the first amended complaint and in plaintiff's aforementioned memorandum, the Health Center is de-scribed as an agency of the state. (Pl.'s Am. Compl. at 8 and Pl.'s Mem. at 9).

■ The Eleventh Amendment bars suits for money damages against a state or its agencies unless the state has unequivocally consented to be sued. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The courts have consistently held that Connecticut state universities and their boards of trustees are entitled to claim immunity under the Eleventh Amendment. *Brown v. W. Conn. State Univ.,* 204 F.Supp.2d 355, 361 (D.Conn. 2002). This immunity also extends to state officials sued in their official capacities. *See Gaynor v. Martin,* 77 F.Supp.2d 272, 281 (D.Conn.1999).

■ A state may be subject to suit in federal court one of two ways: (1) Congress can divest a state of immunity through a statutory enactment, as it has done with Title VII; or (2) a state may waive its immunity and agree to be sued in federal court. *Close v. New York,* 125 F.3d 31, 39 (2d Cir.1997). However, a state may consent to suit in its own courts without consenting to suit in federal court. *Smith v. Reeves,* 178 U.S. 436, 441–45, 20 S.Ct. 919, 44 L.Ed. 1140 (1900).

Under Connecticut law, Conn. Gen.Stat. § 46a–100 [3], Connecticut waived its immunity for suit in state court for CFEPA claims. But it has not clearly expressed a waiver to suit in federal court. Therefore, the courts of this district have consistently found that CFEPA claims against the state or its agents are barred by the Eleventh Amendment. *See Lyon v. Jones,* 168 F.Supp.2d 1, 6 (D.Conn.2001). Count One contains a CFEPA claim against the

---

**3.** Conn. Gen.Stat. § 46a–100 provides:
Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a–82 and who has obtained a release from the commission . . . [for] any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford. . . .

Health Center, an agent of the State of Connecticut, which is protected by immunity under the Eleventh Amendment. Accordingly, summary judgment in favor of the defendants is granted as to the CFEPA claim in Count One.

## B. Connecticut Common–Law Claims

 The state also has immunity under the Eleventh Amendment for state common-law claims. *See Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900, ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"), and *Cates v. Conn. Dep't of Corr.,* No. 3:98CV2232(SRU), 2000 WL 502622, at *12 (D.Conn.Apr.13, 2000). Applying the same reasoning used in analyzing the CFEPA claim, the Health Center is an agent of the state, protected by the Eleventh Amendment. Therefore, the court grants summary judgment in favor of the defendants on Count Five for breach of implied contract and Count Six for intentional infliction of emotional distress.

## C. Title VII

Defendants also maintain that the Title VII claims with respect to promotional opportunities and job advancement in Count One and Count Seven fail as a matter of law because plaintiff did not establish that she was discriminated against on the basis of her race or national origin, subjected to a hostile work environment or retaliated against for engaging in activity protected under Title VII. (Defs.' Mem. at 7).

### 1. Failure to Promote

First, defendants argue that plaintiff fails to make out a *prima facie* claim that she was denied promotions. (Defs.' Mem. at 8).

These claims are analyzed using the three-step, burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff must first establish a *prima facie* case by showing (1) that she was member of a protected class, (2) that she was qualified for the position for which she applied, (3) that she was denied the position and (4) circumstances under which give rise to an inference of discrimination. Defendants must then articulate "a legitimate, nondiscriminatory reason" for giving the positions to the successful applicants. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

 Applying these principals, the court turns to whether plaintiff is able to establish a case of discrimination as to her non selection in the four job categories to which she applied: Medical Assistant, Medical Lab Technician, Clinical Office Assistant and Nurse's Aide. As to the first job category, plaintiff applied at least twice for the position of Medical Assistant between 1999 and 2001. (Pl.'s Tr. at 284). The job posting required two years experience in a hospital, medical facility or office setting as a nursing assistant or medical assistant or clerical experience in a medical setting. (Defs.'s Appendix of Exhibits, E). An associate's degree in allied health or other related field may be substituted for the general experience. (*Id.*). Other special requirements were Certified Medical Assistant with radiology or GI experience. (*Id.*). Plaintiff was not qualified because she was not a Certified Medical Assistant; nor did she have an associate's degree in science. (Pl.'s Tr. at 284 & 281). Plaintiff does not know who filled any of these positions or who was responsible for deciding who would fill these jobs. (*Id.* at 273). Thus, plaintiff does not set forth a *prima facie* case of discrimination because

she did not establish her qualifications for the position and that her non selection for the positions occurred under circumstances giving rise to an inference of discrimination.

■■■ As to the second job category, plaintiff applied for the position of Medical Lab Technician in April 2001. (Pl.'s Tr. at 265). The job requirements were an associate's degree in science and a minimum of one year recent experience working in a progressive hospital or commercial laboratory. (*Id.* at 281). Plaintiff lacked the required experience because she does not have an associate's degree. (*Id.*). Plaintiff did not know if the position was filled or the qualifications of the person who filled it. (*Id.* at 273). Thus, plaintiff does not set forth a *prima facie* case of discrimination because she did not establish her qualifications for the position and that her non selection for the positions occurred under circumstances giving rise to an inference of discrimination.

■■■ As to the third job category, plaintiff also applied for the position of Clinical Office Assistant in April 2000, but withdrew her application because she did not want to work at a desk job. (Pl.'s Tr. at 266 & 279). Thus, plaintiff does not set forth a *prima facie* case of discrimination because she voluntarily withdrew her application.

■■■ As to the fourth job category, plaintiff applied for Nurse's Aide position about four or five times since January 1997. (Pl.'s Tr. at 263). One of the position was filled by a white woman, another by a male who worked in the nursing pool. (*Id.* at 274–275).

■■■ Plaintiff fails to establish a *prima facie* case with respect to a promotion to Nurse's Aide. "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Williams v. R.H. Donnelley, Inc.*, 199 F.Supp.2d 172, 178 (S.D.N.Y.2002). Plaintiff has been a Nurse' Aide since the commencement of her employment at the Health Center. (*Id.* at 17–18). The positions to which she applied are lateral transfers to other departments. Therefore, this court concludes that plaintiff's claims fails as a matter of law. Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's failure to promote claim in Count One.

### 2. Retaliation Claim

Next, defendants contend that plaintiff's claim of retaliation fails as a matter of law because plaintiff failed to allege "retaliation" in any of the seven counts in her first amended complaint. (Defs.' Mem. at 11).

Title VII provides in part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [such employee] has opposed any practice made an unlawful practice by this subchapter." 42 U.S.C. § 2000e–3(a).

"Retaliation claims under Title VII are tested under a three-step burden shifting analysis. First, the plaintiff must make out a *prima facie* case of retaliation. Second, the defendant then has the burden of articulating a legitimate, non-retaliatory reason for the complained of action. Third, if the defendant meets its burden, plaintiff must adduce evidence sufficient to raise a fact issue as to whether [the employer]'s reason was merely a pretext for retaliation."

*Quinn*, 159 F.3d at 768–769 (numerous citations and internal quotation marks omitted).

In order for plaintiff to make out a *prima facie* case of retaliation, she must demonstrate: that she participated in a protected activity; that the adverse employment action disadvantaged her; and that there is a causal connection between the protected activity and the adverse employment action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Plaintiff alleges that she was retaliated against after she complained to management about the treatment of two minority patients. (Pl.'s Tr. at 145). Plaintiff testified that a co-worker grabbed her and had her against a wall. (*Id.* at 144). Plaintiff also stated that her co-workers slammed wheelchairs out of the way, and that she was required to carry heavier patients onto stretchers by herself. (*Id.* at 147–149). She also testified that a co-worker slammed film cassette tapes on the counter. (*Id.* at 150). Plaintiff also stated that a co-worker stated in September 1995 that she wished a hurricane that was over Puerto Rico would "wipe out the island from the map" and that "we could do without those people." (*Id.* at 53). As to job duties, plaintiff also testified that she is no longer able to access the computer or order stock because the ordering process was restructured. (*Id.* at 156–159).

Plaintiff fails to establish that these incidents by co-workers or her change of duties were a result of filing a CHRO complaint. Additionally the September 1995 comment is time barred because it was made more than 300 days before plaintiff filed her CHRO claim on November 12, 1997.

For a discrimination claim to be actionable, plaintiff must sustain a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000)(internal quotation marks omitted). There must be a material loss of benefits or change in responsibilities to constitute a setback in plaintiff's career. *Id.* at 641–42. Therefore, the court grants defendants' motion for summary judgment as to plaintiff's retaliation claims in Count One.

### 3. Hostile Work Environment

In order to prevail on the hostile work environment claim under Title VII as set forth in Count Seven, plaintiff must establish two elements: (1) a hostile work environment; and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer. *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir.1998), and *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997).

To establish the first element—the existence of a hostile work environment plaintiff must prove that the workplace was permeated with "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)(internal citations and quotation marks omitted). The hostile environment must be one that a reasonable person would find hostile or abusive, and that the victim did, in fact, perceive to be so. *Id.* at 21–22, 114 S.Ct. 367. The Supreme Court in *Harris* held that the courts should look to the totality of the circumstances, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes

with the employee's work performance." *Id.* at 23, 114 S.Ct. 367. The incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 n. 1, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)(internal citation and quotation marks omitted). "[O]ne of the critical inquiries in a hostile environment claim must be the *environment.* Evidence of a general work atmosphere . . .—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim." *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997) (internal quotations and emphasis omitted). The Supreme Court has repeatedly emphasized that simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

Second, "plaintiff must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Perry v. Ethan Allen,* 115 F.3d at 149; *Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 249 (2d Cir.1995).

Plaintiff relies on three comments to support her claim of a hostile work environment. First, a statement by a co-worker in September 1995 that she wished a hurricane that was over Puerto Rico would "wipe out the island from the map" and that "we could do without those people." (Pl.'s Tr. at 53). Second, a statement by a co-worker in September 1995 that "they should put Puerto Ricans on a plane and send them back to Puerto Rico." (*Id.* at 54). Management instructed the co-worker to apologize, but she did not. (*Id.* at 58). Third, a statement by a nurse some-time in the 1990's referring to black and Puerto Rican patients as "low life piece[s] of shit, scum sucking dog[s], welfare recipient[s]." (*Id.* at 49).

The court concludes that these sporadic comments, some not directed to plaintiff directly, are not sufficiently severe or pervasive to support a claim of a hostile work environment. Accordingly, the court grants defendants' motion for summary judgment as to Count Seven.

### D. Claims against Dr. Cutler

Count Three and Count Four assert claims against Dr. Cutler in his individual capacity as the former Chancellor of the Health Center. Defendants move for summary judgment on these claims because they contend that Dr. Cutler was not personally involved in any alleged act of discrimination and that because plaintiff was not denied any procedural or substantive due process clause rights as alleged. (Defs.' Reply Mem. at 17). Defendants also claim that Dr. Cutler acted in an objectively reasonable manner with respect to plaintiff's employment at the Health Center and that therefore he is entitled to qualified immunity. (*Id.*)

#### 1. Section 1983 Claim

Courts in this Circuit hold that personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Plaintiff testified that Dr. Cutler never supervised her and did not have any responsibility for deciding what positions plaintiff would have or would not have. (Pl.'s Dep. at 90). Furthermore, plaintiff stated that Dr. Cutler did not personally harass plaintiff because she was Hispanic or Puerto Rican. (*Id.* At 89). Plaintiff

testified Dr. Cutler was named as an individual defendant because he was in a position of authority at the Health Center. (*Id.*). The fact that Dr. Cutler was in a high position of authority is an insufficient basis for the imposition of personal liability. *McKinnon,* 568 F.2d at 934.

2. Section 1981 Claim

 In plaintiff's opposition memorandum, she claims that Dr. Cutler had one meeting with the People With Voices Committee and that he attended a 1998 meeting before the CHRO and "lied to the Commissioners about who the petitioners were", and that these incidents are evidence of his personal involvement and are thus bases for imposing liability. (Pl.'s Mem. at 41–42).

> Due process claims may take either of two forms: procedural due process or substantive due process. Procedural due process claims concern the adequacy of the procedure provided by the governmental body for the protection of liberty or property rights of an individual. Substantive due process claims, on the other hand, concern limits on governmental conduct toward an individual regardless of procedural protections.

*DeLeon v. Little,* 981 F.Supp. 728, 734 (D.Conn.1997).

 As to procedural due process, "[a] plaintiff claiming due process protection under the Fourteenth Amendment must possess a 'property' or 'liberty' interest that is somehow jeopardized by governmental action, necessitating a pre- or postdeprivation hearing as a safeguard." *Dobosz v. Walsh,* 892 F.2d 1135, 1140 (2d Cir.1989). Government acts defaming a person may implicate a liberty interest and may be actionable upon evidence of serious harm, such as a loss of employment. *Id.*

Plaintiff testified that she was not denied a promotion or pay raise as a result of any comments or actions by Dr. Cutler.

(Pl.'s Dep. at 89–90). Plaintiff has not presented sufficient evidence to create a genuine issue of material fact that the alleged actions taken by Dr. Cutler deprived her of a constitutionally protected property interest. Thus, the court grants the defendants' motion for summary judgment as to plaintiff's procedural due process claim.

 As to substantive due process, "[t]he Supreme Court has enunciated two alternative tests by which substantive due process is examined. Under the first test, the plaintiff must prove that the governmental body's conduct 'shocks the conscience.'" *DeLeon,* 981 F.Supp. at 734. "[W]ith regard to [the] 'shocks the conscience' test that [t]he acts must do more than offend some fastidious squeamishness or private sentimentalism ...; they must be such as to offend even hardened sensibilities, or constitute force that is brutal and offensive to human dignity." (Internal quotation marks omitted.) *Id.,* at 734–35. "[M]alicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." *Russo v. Hartford,* 184 F.Supp.2d 169, 196 (D.Conn. 2002).

Here, plaintiff has not presented any evidence to show that defendants engaged in any conduct, that, as a matter of law, "shocks the conscience." *See Catanzaro v. Weiden,* 188 F.3d 56, 64 (2d Cir.1999)(plaintiff "must show that the government action was arbitrary, conscience-shocking, or oppressive in a constitutional sense, and not merely incorrect or ill-advised").

"Under the second test, the plaintiff must demonstrate a violation of an identified liberty or property interest protected by the Due Process Clause." *DeLeon,* 981 F.Supp. at 734. The court has already

determined that the plaintiff has failed to create a genuine issue of material fact as to the existence of a constitutionally protected property or liberty interest and that she was the subject of conduct that "shocks the conscience." Thus, the court concludes that plaintiff's claims against Dr. Cutler fail as a matter of law. Therefore, the court need not reach defendants' argument that Dr. Cutler enjoys qualified immunity from suit. Accordingly, the court grants the defendants' motion for summary judgment as to Count Three and Count Four.

### IV. Conclusion

For the reasons stated above, the court *grants* defendants' Motion for Summary Judgment (Doc. # 93) on all counts in plaintiff Sanchez's first amended complaint.

SO ORDERED.